UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NOUNE PHOMPOR,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3598-SKV

ORDER GRANTING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.

This case has a significant procedural history. On September 24, 2026, Petitioner filed, through counsel, his original 28 U.S.C. § 2241 habeas petition, Dkt. 1, raising various claims to his ICE arrest and immigration detention. His petition was supported by declarations from Thomas Kaplan, Henry Hwang, Vicky Dobrin, and Dr. Thao Ha. Dkts. 2-5. Respondents filed a return memorandum on October 9, 2026, Dkt. 10, accompanied by declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Andre Ouk, Dkt. 11, and their counsel Jennifer Wong, Dkt. 12.

On October 13, 2026, Petitioner filed, through counsel, an amended habeas petition, Dkt. 13, asserting similar claims to those raised in his original petition with the exception that "[s]ince the original petition was filed, the California [Superior Court] has vacated the sole conviction underlying Petitioner's removal order[.]" *Id.* at 2. Petitioner further asserts in his amended petition that the vacatur is relevant to his petition because it renders his removal order legally invalid and "eliminates the legal predicate for . . . the Government's asserted detention authority." *Id.* Petitioner's amended petition is accompanied by a different declaration from Thomas Kaplan, Dkt. 14 ("Second Kaplan Decl.") and references the earlier-filed declarations from Kaplan ("First Kaplan Decl."), Hwang, Dobrin, and Dr. Ha. *See generally* Dkt. 13. The Court assumes Petitioner intended to incorporate the earlier-filed declarations of Hwang, Dobrin, and Dr. Ha into his amended habeas petition.

On October 19, 2026, while the amended petition was pending on the Court's docket, Respondents filed a "Notice of Imminent Removal," Dkt. 18, which provided advance notice, pursuant to the Court's scheduling order filed at Dkt. 6, that Respondents intended to remove Petitioner to Laos sometime in October 2026. *See* Dkt. 18-1 at 1. The proof of service document attached to the notice shows ICE served Petitioner a copy of the notice on October 17, 2026. *See id.* at 2.

In response to the Notice of Imminent Removal, Petitioner filed an Emergency Motion for a Temporary Restraining Order ("TRO"), Dkt. 19, which sought to temporarily enjoin Respondents from transferring him out of the Western District or removing him from the United States until his habeas petition could be decided on the merits. *Id.* at 1. The motion for TRO was supported by a declaration from his attorney Jingni Zhao. Dkt. 20 ("First Zhao Decl."). The Court provisionally granted the motion, *see* Dkt. 22, and temporarily enjoined Petitioner's

transfer and removal until the habeas petition was adjudicated. *Id.* The Court also set an amended briefing schedule for the parties to respond to the amended petition and the motion for TRO. *See id.* at 2.

On October 23, 2026, Respondents filed their return memorandum and opposition to the TRO, Dkt. 23, together with declarations from DHS Deportation Officer Freite Subero, Dkt. 24 ("Subero Decl."), and Jennifer Wong, Dkt. 25 ("Second Wong Decl."). Petitioner filed his traverse in reply, Dkt. 26, together with a declaration from himself, Dkt. 27 ("Phompor Decl.") and his attorney Jingni Zhao, Dkt. 28 ("Second Zhao Decl.").

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the amended petition, Dkt. 13, for the reasons set forth herein.

## I. BACKGROUND

Over forty-five years ago, Petitioner arrived in the United States as a one-year-old child after his family escaped from Laos, fearing for their safety from the "communist regime" over the support his family provided to the United States during the Vietnam War. Dkt. 13, ¶ 19. Petitioner became a lawful permanent resident on August 30, 1982, and has never left the United States since entering in 1981. *Id.* ¶ 20.

Petitioner asserts that, after becoming "swept up in street life," he began using drugs—which led to a "series of criminal convictions relating to drugs and firearm possession." *Id.* ¶ 21. On June 1, 2007, Petitioner was convicted of possession of a controlled substance in California. Ouk Decl., ¶ 4. While in criminal custody, ICE's Office of Enforcement and Removal Operations ("ERO") issued Petitioner with a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA"). *Id.* ¶ 5. An immigration judge

ordered Petitioner removed to Laos on November 16, 2009. *Id.* ¶ 6. Petitioner did not appeal the removal order. *Id.*

Petitioner remained in ICE custody until February 10, 2010, when ERO released Petitioner into the United States on an Order of Supervision ("OSUP") because "ERO did not believe that removal was significantly likely in the reasonably foreseeable future." Dkt. 23 at 5. Petitioner was also enrolled in an Alternatives to Detention ("ATD") program on February 17, 2010, but was terminated from the program after he failed to meet the requirements. Ouk Decl., ¶ 7. Officer Ouk asserts that between February 10, 2010, and August 24, 2026, Petitioner was booked into ICE custody and released on an OSUP "at least eight times." *Id.* ¶ 8.

Although Petitioner was involved in gang membership and suffering from substance abuse in his earlier years, Petitioner asserts he has since led a path to recovery. Dkt. 13, ¶ 24. In 2022, he settled in the Port Angeles, Washington area, where he and his partner live and work. *Id.* ¶¶ 24-25. His child, a U.S. citizen, was born in April 2025. *Id.* ¶ 25. In 2024, Petitioner filed an application with U.S. Citizenship and Immigration Services to adjust his status but did not realize he was ineligible. *Id.* ¶ 27.

ICE arrested Petitioner on September 2, 2026, after he stepped outside his place of employment. *Id.* ¶ 26. Officers provided him with a notice of revocation of release that stated his OSUP was being revoked because "ICE ha[d] the ability and means to effectuate [his] removal." *Id.*; *see* Wong Decl., ¶ 2, Ex. 3 at 2. Petitioner asserts that one of the Border Patrol agents who arrested him told him that ICE became aware of him and learned his address through his 2024 application to adjust status. Dkt. 13, ¶ 27.

On October 12, 2026, while Petitioner's original petition was pending, the Fresno County Superior Court vacated, along with approximately ten others, Petitioner's 2007 criminal

conviction that served as the underlying basis for his removal order. *Id*. at 8; *see* Second Kaplan Decl., ¶ 2, Exs. A (order vacating convictions), B (same). As noted, Petitioner asserts that, "[a]s a result of the vacatur of his 2007 conviction, there is no longer any legal predicate for Petitioner's removal order." Dkt. 13 at 8.

Around the same time Petitioner filed the amended habeas petition, Petitioner's counsel completed and attempted to file with ICE a Form I-246 Application for a Stay of Deportation or Removal. First Zhao Decl., ¶ 2. ICE refused to accept the filing because Petitioner did not have a passport. *Id.*

On October 14, 2026, Petitioner filed a motion to reopen and terminate his removal proceedings and an emergency motion to stay his removal in the Eloy, Arizona Immigration Court. Dkt. 19 at 3; *see* Second Zhao Decl., ¶ 3. As of October 28, 2026, the immigration court had yet to rule on either motion. Dkt. 26 at 2; Second Zhao Decl., ¶ 10.

On October 19, 2026, after Respondents filed the Notice of Imminent Removal, Petitioner's counsel attempted to contact both the Eloy Immigration Court and Respondents' counsel for an update regarding the emergency stay motion, as well as to notify Respondents of the Court's scheduling order prohibiting Petitioner's transfer from the District. Second Zhao Decl., ¶¶ 4-6. Instead of receiving an update on the requested information, Petitioner's counsel received an email from Respondents' counsel notifying him that Respondents "filed their notice of imminent removal with the Court[.]" *Id.* ¶ 8. According to Zhao, Respondents' counsel did not provide explanation or clarification with respect to Petitioner's transfer or imminent removal. *Id.* Officer Subero asserts that "ERO believes that there is a significant likelihood of removal in the reasonably foreseeable future" because "ERO has a valid travel document for Petitioner, and

Petitioner is manifested on a charter flight for removal to Laos in the near future." Subero Decl., ¶ 8.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions. 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner raises five claims in his amended petition. First, Petitioner asserts that there is no longer any statutory authority for his detention because he is no longer removable as a matter of law. Dkt. 13 at 30-31. The second, third, and fourth causes of action challenge the lawfulness of his September 2, 2026, arrest and redetention on constitutional, statutory, and regulatory grounds. *Id.* at 31-33. His fifth cause of action seeks to enjoin the Government from executing his removal order that he asserts is now lacking an underlying legal basis for its existence. *Id.* at 33-34. He seeks release from custody, an order enjoining the Government from redetaining him without first satisfying certain criteria, an order enjoining the Government from "enforcing Petitioner's legally invalid removal order," and declaratory relief that enforcement of his removal order would be unlawful. *Id.* at 34.

In response, Respondents contend that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) and that his detention has not become indefinite under *Zadvydas* because Respondents have a valid travel document and "Petitioner is manifested on a charter flight to

Laos in the near future." Dkt. 23 at 1, 10-13. As for Petitioner's September 2, 2026, arrest and redetention, Respondents contend ICE complied with due process because Petitioner "was provided notice of the revocation of his Order of Supervision . . . and an informal interview at the time of his arrest." *Id.* at 1, 13-16. Finally, Respondents argue this Court lacks jurisdiction to decide Petitioner's challenge to the validity of his removal order. *Id.* at 8-10.

**A. *Mathews* and Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The parties apply the *Mathews* framework to Petitioner's redetention but reach opposite conclusions. *Compare* Dkt. 13 at 13-17, *with* Dkt. 23 at 13-16.

//

//

1. *Petitioner had a liberty interest in remaining free.*

The "most elemental" of the liberties protected by the Due Process Clause is "the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion); *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"). Respondents contend Petitioner's liberty interest was reduced because it was conditioned on the Government's ability to redetain him upon changed circumstances, which in Petitioner's case was the Government's possession of a travel document to Laos. Dkt. 23 at 14-15.

However, the first *Mathews* factor is not focused on the Government's asserted justification for the governmental action, but rather on the personal interest affected by it. The Supreme Court has acknowledged that even those conditionally released have a protected liberty intertest in remaining free. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Petitioner's circumstances only strengthened that interest. Petitioner has been on supervised release for well over a decade. During that time, he has gained employment, had a child with his partner, and pursued immigration-relief—all of which were possible only because of his freedom. The first *Mathews* factor weighs in his favor.

2. *There was a high risk of error.*

Respondents contend the risk of error was low because ICE followed revocation regulations and provided Petitioner with notice and an informal interview after he was redetained. Dkt. 23 at 2, 13-16. However, the Supreme Court has recognized that the Constitution usually "requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). *See also E.A. T.-B.*, 795 F. Supp.

3d at 1324 (recognizing that "a post-deprivation hearing cannot serve as an adequate procedural safeguard" under due process).

Taking a step back however, the Court observes that the change in circumstances Respondents identify as providing the genesis for Petitioner's September 2, 2026, arrest and redetention—the travel document to Laos—had not been issued until September 25, 2026. *Compare* Wong Decl., ¶ 2, Ex. 3 (August 24, 2026, notice of revocation indicating "ICE has obtained a travel document and scheduled your removal to take place no later than October 20, 2026"), *with id.*, ¶ 2, Ex. 4 (travel document dated September 25, 2026). Respondents do not acknowledge this discrepancy or assert that an earlier travel document was issued prior to the September 25, 2026, travel document that is in the record.

That unresolved issue alone demonstrates there was a high risk of an erroneous deprivation and value in additional procedural safeguards because the current record does not support Respondents' assertion that there was a material change in circumstances at the time of Petitioner's September 2, 2026, redetention. Providing pre-deprivation notice would have allowed Petitioner to challenge the legal and factual bases for his redetention. This *Mathews* factor favors Petitioner.

3. *The Governmental Interest*

Respondents assert the Government "has a strong interest in preventing [noncitizens] from remaining in the United States in violation of our law." Dkt. 23 at 15 (quoted source cleaned up and omitted). Respondents further emphasize that Petitioner's removal order from 2009 is final and "DHS is merely now enforcing the order that has been outstanding against Petitioner for almost two decades." *Id.* at 15-16. It is unclear to the Court how either of these arguments support, rather than undermine, Respondents' argument.

For the last fifteen years, ICE has allowed Petitioner to live freely in the United States, with little evidence the Government ever sought to act on, or enforce, Petitioner's removal order. Further, DHS has already found, at least once in 2010, that Petitioner's removal to Laos was not significantly likely to occur in the reasonably foreseeable future. Dkt. 23 at 5 (citing Ouk Decl., ¶ 7). And despite facing increasing evidence that Petitioner's removal order is likely facially invalid now that the underlying conviction has been vacated, Respondents maintain that Petitioner's detention complied with due process and his removal is still reasonably likely to occur. The Government certainly has an interest in enforcing valid removal orders, but its interest in doing so without a hearing—particularly under Petitioner's circumstances—was low. The travel document in the record is valid for ninety days, *see* Wong Decl., ¶ 2, Ex. 4 at 2, which allowed for the Government to provide pre-deprivation notice and an opportunity to respond before returning Petitioner back into custody. The Court does not find Respondents have identified an interest that justified forgoing pre-deprivation process. This last factor also favors Petitioner.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, No. C26-1253-SKV, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, No. C26-0292-SKV, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

In finding Petitioner is entitled to release under *Mathews*, the Court need not reach Petitioner's claims under *Zadvydas* or federal regulations. *See* Dkt. 13 at 31-33 (Counts Three and Four). Those claims are accordingly denied as moot.

**B. Validity of Removal Order and Statutory Basis to Detain**

Petitioner asserts that this Court has the statutory authority to enjoin the execution of a removal order if he "demonstrates by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." Dkt. 13 at 26 (citing 8 U.S.C. § 1252(f)(2)). Petitioner relatedly asserts that ICE no longer has a statutory basis for his detention under 8 U.S.C. § 1231(a)(6) because he is no longer "inadmissible" or "removable" due to a criminal conviction. *Id.* at 12 (citing and quoting § 1231(a)(6)). Respondents do not challenge Petitioner's assertion that his now-invalidated criminal conviction was the sole basis for his subsequent removal order. *See generally* Dkt. 23. Nor do Respondents directly acknowledge or respond to Petitioner's assertion that the vacatur of his conviction invalidated his removal order and that his removal would thus be illegal or a gross miscarriage of justice. *Id.* Instead, Respondents appear to maintain that Petitioner's removal order remains valid and that § 1252(g) strips this Court of jurisdiction to enjoin its removal. *Id.* at 8-10.

Generally, a district court lacks jurisdiction to stay removal when a final order of removal is in place. 8 U.S.C. § 1252(g); *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022). Petitioner argues that § 1252(f)(2) nevertheless authorizes this Court to enjoin its enforcement because he has shown by clear and convincing evidence that effectuating the removal order is prohibited as a matter of law. Dkt. 19 at 8-11 (citing 8 U.S.C. § 1252(f)(2)). However, Petitioner has not shown that this Court, or federal district courts generally, have original jurisdiction to enjoin a removal order under § 1252(f)(2).

Petitioner has already filed a motion to reopen and terminate his removal proceedings, along with an emergency motion to stay his removal. Both of those motions—the substance of which are not before this Court—were filed with, and remain pending, in the Eloy immigration court. Those decisions can then be appealed to the Board of Immigration Appeals, the decisions of which can then be appealed to the Ninth Circuit. *See Perez-Camacho v. Garland*, 54 F.4th 597, 603 (9th Cir. 2022) ("We generally have jurisdiction over the BIA's denial of a motion to reopen, . . . which includes review of the BIA's determination that '[a noncitizen] has failed to provide a sufficient justification for an untimely motion' to reopen[.]") (internal citations and quoted source omitted). Petitioner has not provided authority that shows a noncitizen is permitted to essentially bypass that process by going directly to a district court.

Further, Title 8, Section 1252 also seems to require Petitioner to seek review in the Ninth Circuit. Subsection (a)(5), entitled "Exclusive means of review," states in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).

8 U.S.C. § 1252(a)(5).

Here, in seeking to enjoin his removal, the underlying basis for his request is what Petitioner characterizes as a now-invalid order of removal. *See* Dkt. 13 at 26 ("Petitioner is not asking the Court to suspend an otherwise valid removal order on equitable grounds. He seeks to prevent the Government from carrying out an order that is legally invalid."). Thus, his request necessarily requires this Court to undergo some amount of "judicial review of an order of removal," which, under § 1252(a)(5), appears to fall within the authority of the Court of Appeals.

It is particularly notable that Petitioner's briefing does not cite any district court decision that has acknowledged it has jurisdiction to review the lawfulness of the underlying removal order or otherwise enjoined the Government from executing a removal order under § 1252(f)(2). *See* Dkt. 13 at 24-25. And the procedural history for Petitioner's cited cases further leads to the conclusion that this Court and district courts generally lack jurisdiction to order the relief sought. In *Vega-Anguiano v. Barr*, 982 F.3d 542, 547 (9th Cir. 2019), the petitioner "collaterally attack[ed] the underlying removal order" by filing a petition for review of the reinstatement order" with the Ninth Circuit. Similarly, in *Nath v. Gonzales*, 467 F.3d 1185, 1189 (9th Cir. 2006), the petitioner filed a petition for review in the Ninth Circuit after the BIA denied his motion to reopen. In *Wiedersperg v. I.N.S.*, 896 F.2d 1179, 1181 (9th Cir. 1990), the petitioner had "petitioned the BIA to reopen his case on the ground that his deportation had been based on an invalid conviction. The BIA denied [the] petition. [Petitioner] timely appealed to this court." None of these cases support the proposition that a petitioner can go directly to a district court for relief under § 1252(f)(2).

Moreover, Petitioner's request to enjoin his removal, in essence, circumvents the proceedings pending before the Eloy immigration court altogether because enjoining his removal would necessarily require this Court to find that Petitioner has proven by clear and convincing evidence that execution of his removal order is prohibited as a matter of law. *See* 8 U.S.C. § 1252(f)(2). Presumably, this is similar, if not identical, to what Petitioner seeks to prove in his pending motion to reopen and terminate his removal proceedings. *See* 8 U.S.C. § 1229a(c)(7)(B) (requiring the motion to reopen to "state the new facts that will be proven at a hearing" and requiring the facts to be "supported by affidavits or other evidentiary material"). Thus, even if this Court had original jurisdiction to entertain Petitioner's request to enjoin his removal under

§ 1252(f)(2), the still-pending motions before the Eloy immigration court raises the question of whether Petitioner should first be required to exhaust those motions before seeking similar relief in a collateral habeas proceeding. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (noting that "prudential exhaustion is ordinarily required when . . . excusing a party from exhausting administrative remedies would encourage the 'deliberate bypass' of the administrative scheme"). The parties, however, do not raise or brief exhaustion in their pleadings.

With these unresolved issues, the Court does not find that Petitioner has shown this Court has jurisdiction to enjoin execution of his removal order under § 1252(f)(2). *See* Dkt. 13 at 33-34; Dkt. 19. Thus, the Court does not reach whether Petitioner has proven by clear and convincing evidence that enforcement of the removal order would be legally erroneous. Because the Court does not make that threshold finding, it cannot find that there no longer exists any statutory basis for Petitioner's detention. *See* Dkt. 13 at 30-31. In so finding, this Court expresses no position on the merits of Petitioner's pending motion to reopen and terminate his removal proceedings that is before the Eloy immigration court. Petitioner may ultimately be entitled to have his removal stayed, or his removal order vacated, but on the current record, the Court is not satisfied such relief can come from this court.

**C. Remaining Requests for Injunctive Relief**

Petitioner also seeks to enjoin the Government from redetaining him without first providing "notice and a hearing before a neutral court to determine whether re-detention is appropriate" and similarly prohibit the Government from redetaining him without first providing "at least 30 days advance notice of a travel document and a scheduled deportation flight and provide him an opportunity to appear for a scheduled flight without detention." *Id.* at 34.

Although the Court has found that Petitioner's September 2, 2026, redetention without process was constitutionally deficient under the Fifth Amendment, it does not necessarily follow that Petitioner will continue to face a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive" after being released pursuant to this Court's order. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Nor has Petitioner provided sufficient authority to order such specific injunctive relief, such as a hearing before a "neutral" court, or 30 days advance notice, prior to redetaining him. His request is accordingly denied without prejudice.

**D. Motion for TRO**

Petitioner's motion for a TRO, which was provisionally granted, sought "narrow" relief: "an order barring Respondents from transferring [him] out of the Western District of Washington or otherwise seeking to remove him until the Court rules on his Amended Petition." Dkt. 19 at 2. Now that the Court has ruled on the merits of his amended petition, the Court vacates the Order provisionally granting the TRO, Dkt. 22. To the extent the TRO seeks to enjoin Petitioner's removal based on § 1252(f)(2) or a purported lack of statutory authority, the Court has already denied those identical claims asserted in the habeas petition above.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the amended petition, Dkt. 13, and ORDERS that Petitioner be released from immigration detention **within twenty-four (24) hours of this Order**, subject to reasonable conditions of release not to exceed those previously imposed on Petitioner. Respondents shall file a status report with the Court **within forty-eight (48) hours** that Petitioner has been released. Petitioner's claims under *Zadvydas* ("Count Three") and federal regulations ("Count Four") are DENIED as MOOT. Petitioner's claims

asserting a lack of detention authority ("Count One") and seeking to enjoin execution of his removal order ("Count Five") are DENIED without prejudice. Petitioner's request for injunctive relief related to his future redetention is DENIED. The Order provisionally granting Petitioner's emergency motion for a TRO, Dkt. 22, is VACATED as MOOT. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

DATED this 19th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge